In The United States District Court
Northern District Of Illinois
Eastern Division

FILED

APR 21 2014
APR 21 2014
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

William Nally,
　　　　Plaintiff,

v.

Parthasarathi Ghosh, et al.,
　　　　Defendants

No. 13 C 7268

Honorable James F. Holderman

Judge Presiding.

## PLAINTIFF'S MOTION FOR RELIEF FROM A JUDGMENT OR ORDER

Plaintiff, William Nally, pro se, pursuant to Federal Rule of Civil Procedure 60, respectfully moves this Honorable Court to grant his Motion for Relief From a Judgment or Order in the above-captioned matter, and in support thereof, states as follows:

1. Plaintiff is a prisoner of the Illinois Department Of Corrections and currently incarcerated at Stateville Correctional Center.

2. Plaintiff is proceeding "pro se" in the above-captioned matter, but has no formal education. (see concurrently filed, Pl. Declaration in Support of Motion for Relief From a Judgment or Order).

3. On or about October 9, 2013, Plaintiff filed the instant Civil Rights Action. On October 21, 2013, the Court granted Plaintiff's application to proceed in forma pauperis, but held that Plaintiff had 30 days to show cause as to why his Action should not be dismissed as untimely. (Ct. Dkt. # 4).

4. On January 14, 2014, subsequent to his timely filed response, the Court dismissed Plaintiff's Action with prejudice after holding that his Response was "inadequate to establish that his claims are timely." (attached ex A, Dismissal Order).

5. Notice of the Court's Judgment was processed and delivered via the institution's "nonlegal" mail system, and as such, Plaintiff was not in receipt or cognizant of the Court's Judgment until March 25, 2014.

6.   Plaintiff has filed a complaint (i.e., institutional grievance) regarding the inexplicably late delivery of said Notice, and now files this motion.

7.   In addition to a meritorious cause, Plaintiff contends that pursuant to the applicable "tolling statutes" and "stare decisis," his claims are in fact timely and the Court may have incorrectly dismissed his Action.

8.   Plaintiff respectfully asks this Honorable Court to vacate the Judgment for the reasons set forth in the attached Memorandum of Law in Support, and direct the Clerk of the Court to issue Summons in the above-captioned matter.

WHEREFORE, Plaintiff prays that this Honorable Court grant his Motion for Relief From a Judgment or Order, and set this matter for further proceedings.

Respectfully Submitted,

Date:   April 11, 2014

William Nalley

William Nalley
Reg. No. N54494
P.O. Box 112
Joliet, IL 60434

# In The United States District Court
# Northern District Of Illinois
# Eastern Division

William Nally
    Plaintiff,

v.

Parthasarathi Ghosh, et al.,
    Defendants.

**No.** 13 C 7268

**Honorable** James F. Holderman

**Judge Presiding.**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM A JUDGMENT OR ORDER

### INTRODUCTION

Plaintiff, William Nally, is currently a prisoner of the Illinois Department Of Corrections ("IDOC"), and incarcerated at Stateville Correctional Center ("Stateville"). Despite years of complaints, as well as numerous healthcare visits and medical tests, Plaintiff was not treated for his diabetic condition. In fact, Plaintiff did not learn of his diabetic condition until visiting a hospital, outside of Stateville, for an unrelated matter. There, a physician consulting Plaintiff made a quasi-diagnosis and recommendation for further diabetic testing, as well as apprised Plaintiff of the tell-tale signs and test results that indicate a possible diabetic condition. Subsequent to receiving his medical files, Plaintiff discovered that Defendants Parthasarathi Ghosh, M.D. ("Ghosh") and Liping Zhang, M.D. ("Zhang") were cognizant of Plaintiff's serious medical condition for several years and neither informed nor treated Plaintiff. As such, Plaintiff filed the above-titled Civil Rights Action to redress the violation of his constitutional rights.

### STATEMENT OF FACTS

From May 2005 until November 2010, Plaintiff repeatedly submitted healthcare requests, and complained regarding medical problems which he now believes were associated with and/or indicative of his diabetic condition. Plaintiff first learned of his diabetic condition in November 2010, but did not receive evidence of as much until receiving his medical file in April 2011. Plaintiff filed several grievances (between 12/20/10 and 4/21/11) regarding, inter alia, his diabetic condition. Plaintiff's grievances were

apparently consolidated by prison officials, and his administrative remedies were exhausted on January 10, 2012.

On October 9, 2013, Plaintiff's Complaint in the above-titled matter was filed in the U.S. District Court for Northern Illinois. On October 21, 2013, the Honorable Judge James F. Holderman ordered Plaintiff "to show cause why his action should not be dismissed as untimely." (see Ct. Dkt. # 4, Court's Order) Plaintiff filed a timely response as ordered, and on January 14, 2014, the Court dismissed Plaintiff's Action with prejudice as "having been untimely filed." (see attached ex B, Court's Dismissal Order) However, Plaintiff did not learn of the Court's Judgment until March 25, 2014 (see concurrently filed Plaintiff's Declaration in Support of his Motion for Relief From a Judgment or Order). Plaintiff now files this Motion for Relief From a Judgment or Order in the above-captioned matter, pursuant to Fed. R. Civ. P. 60.

## ARGUMENT

### The Applicable Tolling Doctrines

Plaintiff concedes that 42 U.S.C. section 1988 requires federal courts to borrow and apply Illinois's personal injury statute of limitations to all Section 1983 claims. And, as the Court expressed, 735 ILCS 5/13-202 is an applicable statute in Plaintiff's case. However, Section 5/13-202 is but _one_ of the applicable statutes, just as 735 ILCS 5/13-216 (2012) is another. Moreover, "because 'the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application,' federal courts must 'also borrow[] the state's tolling rules — _including any equitable tolling doctrines_.'" _Johnson v. Rivera_, 272 F.3d 519, 521 (7th Cir. 2001)(quoting _Smith v. City of Chicago Heights_, 951 F.2d 834, 839-40 (7th Cir. 1992))(emphasis added). As such, Illinois's "continuing tort" doctrine is just as applicable as the "discovery rule" doctrine expressed in _Richards v. Mitcheff_, 696 F.3d 635, 637 (7th Cir. 2012).

In looking to borrow Illinois's personal injury statute of limitations, federal courts cannot simply apply "Section 5/13-202," yet jettison the "discovery rule" and "continuing tort" doctrines, if they are also applicable. Here, in light of rigid language of Section 5/13-202, the discovery rule was created by the judiciary to alleviate the harsh consequences that would flow from literal applications of the limitations period. _Golla v. General Motors Corp._, 657 N.E.2d 894, 898, 167 Ill.2d 353 (1995) The Illinois Supreme Court has held that the effect of the discovery rule is to "postpone commencement of the relevant statute of limitations" until the injured plaintiff knows or reasonably should know that he has been injured and that his injury has been wrongfully caused.

-2-

*Id.* (citing *Jackson Jordan, Inc. v. Leydig, Voit and Mayer*, 158 Ill.2d 240, 249 (1994)). Under the continuing tort "rule," "where a tort involves a continuing or repeat injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85, 207 Ill.2d 263 (2003) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 345 (2002).

## Plaintiff's Action Is Timely Filed.

From May 2005 through November 2010, Plaintiff repeatedly complained and submitted healthcare requests regarding — what he now knows were — problems related to his diabetic condition. On or about November 23, 2010, Plaintiff was transported to the University of Illinois at Chicago ("UIC") Medical Center for a different medical issue. It was a UIC physician who first apprised Plaintiff of his possible diabetic condition, as well as recommended that specific tests be performed by the institutional healthcare providers. (attached ex B, Medical Special Services Referral and Report) On or about December 8, 2011, following myriad complaints and healthcare requests for the treatment recommended by the UIC physician, Plaintiff spoke with the Warden (Hardy) and was escorted to the health care unit ("HCU") where he was ultimately tested and treated for his diabetic condition. Plaintiff initially filed grievances — regarding, inter alia, his diabetic condition — on December 20, 2010 and January 7, 2011. (see attached exs. C and D). However, after finally receiving a copy of his medical records on April 5, 2011, Plaintiff discovered that Zhang and Ghosh were cognizant of his diabetic condition for as long as five years. Therefore, Plaintiff did not learn of Ghosh and Zhang's involvement until reviewing his medical records while conscious of the diabetic-indicative tests, and as such, he filed a grievance on April 21, 2011. (see attached ex. E).

Subsequent to citing the applicable Illinois statute for the personal injury statute of limitations (i.e., 735 ILCS 5/13-202 (2006)), the Court cited Seventh Circuit authority in the form of *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013). More specifically, the Court expressed that "the federal rule for medical errors is that a claim accrues when a person knows his injury and its cause." *Id.*, at 768 (quoting *Richards*, 696 F.3d at 637) (see attached ex. A). Further, in the Court's order on October 21, it is clearly acknowledged that Plaintiff pleaded that "he received a copy of his medical file on April 5, 2011, and became aware of his condition, and the failure to provide him adequate care." (Ct. Dkt. # 4).

Nonetheless, in the January 14 order, the Court expresses that Plaintiff's Complaint stated that "on or about March 21, 2007, subsequent to making complaints about 'diabetic-esque' health problems, his glucose level was

-3-

118. " (see attached ex. A). Then the Court held that due to Plaintiff pleading that the March 21 "glucose level" number was out of range, he has pled that "he was aware of his medical condition as early as March 21, 2007. " (Id.) Moreover, the Court goes on to express that Plaintiff "mistakenly argues that when he received his medical records on April 11, 2011 [sic], his claim accrued[.]" (Id.) In turn, Plaintiff is hardpressed to comprehend the Court's reasoning, and contends that it is problematic for several reasons.

First, the Court expresses that since Plaintiff pleaded that the results of a March 21 medical test indicated his blood-glucose level was 118 — and thus, out of range — Plaintiff essentially pleaded that "he was aware of his medical condition as early as March 21, 2007. "(Id.) The Court's assessment has befuddled Plaintiff since nowhere in his Complaint does he aver that he learned of any results on March 21, 2007, and as much would be impossible since said results were prepared by the UIC Medical Center, but not reviewed and signed by (upon information and belief) Zhang until April 5, 2007. (see attached ex. E). In fact, one of the major issues giving rise to Plaintiff's Complaint pivots on the fact that, while being fully cognizant of Plaintiff's medical condition, neither Zhang nor Ghosh apprised or treated him for as much.

Second, even assuming, arguendo, that Plaintiff had somehow discovered the test results on March 21, for the purpose of a "deliberate indifference to Plaintiff's serious medical needs" claim — in light of the instant circumstances — it is a far cry to posit that his claim(s) became ripe on March 21. To begin, Plaintiff has no medical training or expertise that would allow him to self-diagnose his medical condition, or "know his injury and its cause" after reviewing a printout of the test results. And in fact, as stated in Plaintiff's grievances and Complaint, it was only after speaking with the UIC physician that Plaintiff learned of his diabetic condition, as well as the diabetes-indicative tests and symptoms. (see attached ex. F). Moreover, if Illinois's "discovery" doctrine and/or Seventh Circuit authority cited by this Court are a litmus test for determining Plaintiff's claim-accrual date, then it would be highly improbable, if not impossible, for his claim to have accrued on March 21 without an injury. In other words, if Plaintiff's blood was "collected and tested" on March 21 (see attached ex E), and the applicable federal rule for medical errors is that "a claim accrues when a person knows his injury and its cause [,] Devbrow, 705 F.3d at 768, then where the March 21 blood test was neither a "per se" tortious act nor the "complained of" act, Plaintiff could not possibly be said to know of an injury — let alone its cause — where no "injury" had yet occurred to give rise to a claim.

The Court's order expressed that Plaintiff's Complaint repeatedly pleaded that from March 2007 until 2010, he made complaints "regarding his health

-4-

care relating to his blood glucose levels." (See attached Ex. A). However, it appears that Plaintiff's pleadings have been misapprehended, as nowhere in his Complaint does he ever plead that he made complaints, or submitted healthcare requests for that matter, specifically regarding his <u>healthcare relating to his blood glucose levels</u>. Stated as such not only mischaracterizes Plaintiff's Complaint, but also infers that Plaintiff was cognizant of his glucose levels — which is impossible since he was not made aware of his diabetic condition until conferring with the UIC physician in November 2010, and did not receive his medical records until April 2011. Plaintiff's Complaint pleaded that he made "complaints regarding, inter alia, <u>diabetic-esque health problems.</u>"

The Court also expressed that Plaintiff "mistakenly argues" that his claim accrued when he received his medical records on April 11, 2011.[1] However, in light of the circumstances with respect to Plaintiff's Action, the applicable tolling doctrines provide for only two plausible claim-accrual dates — December 8, 2010 or April 5, 2011. Plaintiff first learned about the possibility of a diabetic condition after conferring with a UIC physician on November 23, 2010, but he did not receive confirmation and treatment until December 8, 2010. Therefore, December 8 was "the date of the last injury or the date the tortious acts cease[d]." <u>Feltmeir</u>, 798 N.E.2d at 85 (quoting <u>Belleville Toyota, Inc.</u>, 199 Ill.2d at 345) Alternatively, Plaintiff did not learn of the numerous diabetes-indicative test results, signed by (upon information and belief) Zhang and Ghosh, until he received a copy of his medical records on April 5, 2011. Thus, for the purpose of Plaintiff's claim which arose from the acts and/or omissions of Zhang and Ghosh, April 5 was the date that Plaintiff learned of "his injury and its cause." <u>Devbrow</u>, 705 F.3d at 768 (quoting <u>Richards</u>, 696 F.3d at 637). Since medical records and test results are <u>not</u> automatically provided to inmates, where healthcare providers withheld information regarding Plaintiff's diabetic condition, if he had not seen the UIC physician and subsequently ordered his medical records, Plaintiff could not and may not have learned of the injury and cause giving rise to his claim.

Lastly, in looking to Illinois's personal injury statute of limitations, the "continuing tort" doctrine <u>is</u> applicable to Plaintiff's claim. The Court fully acknowledges that Plaintiff pleaded that he did not receive treatment for his medical condition until December 2010. Nonetheless, for some enigmatic reason, the Court has expressed that Plaintiff's claim accrued on March 21 — the same day that Plaintiff provided blood as part of a medical examination — as if

---

[1] Plaintiff actually received the copy of his medical records on April 5, 2011, as stated in his grievance and Complaint.

-5-

the gravamen of his claim pivots on the blood test(s), or any one specific act and /or omission for that matter. One staple of Plaintiff's Complaint is that while he constantly complained of "diabetic-esque" health problems since 2005, he did not receive treatment until December 2010, and "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." Feltmeir, 798 N.E. 2d at 85 (quoting Belleville Toyota, Inc., 199 Ill.2d at 345) Therefore, even assuming, arguendo, that Plaintiff did discover his diabetic condition in March 2007, since the defendants were obligated to provide medical care for Plaintiff's condition, the tortious acts did not cease until he received said medical care on December 8, 2010. And as such, under the applicable "tolling doctrines" for Illinois's personal injury statute of limitations, the earliest date that Plaintiff's claim could have begun to accrue was December 8, 2010.

## CONCLUSION

In light of the foregoing, Plaintiff has demonstrated that his Complaint was in fact timely filed, and thus, erroneously dismissed by the Court. As such, this Honorable Court should grant the motion sub judice and docket Plaintiff's Complaint for further proceedings.

Respectfully Submitted,

William Nally

William Nally
Reg No. N51494
P.O. Box 112
Joliet, IL 60434

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM NALLY (#N-51494),<br>Plaintiff, | )<br>)<br>) | Case No: 13 C 7268 |
| v. | )<br>)<br>) | Judge James F. Holderman |
| PARTHASARATHI GHOSH, et al.,<br>Defendants. | )<br>) | |

## ORDER

On October 21, 2013, the Court ordered Plaintiff to show cause as to why this case should not be dismissed as untimely. Plaintiff has responded as ordered. The Court finds that Plaintiff's response is inadequate to establish that his claims are timely. Consequently, this case is dismissed with prejudice as having been untimely filed. This case is closed on the Court's docket.

## STATEMENT

Plaintiff has filed this cause of action pursuant to the Civil Rights Act, 28 U.S.C. § 1983. Plaintiff alleges that he was subjected to deliberate indifference to a serious medical condition at Stateville from May 20, 2005, when he arrived at the facility, until April 5, 2011. Plaintiff has named Drs. Ghosh and Zhang, as well as Wexford Health Sources, Inc. as Defendants. On October 21, 2013, the Court ordered Plaintiff to show cause as to why this case should not be dismissed as untimely. Plaintiff responded in a timely manner.

The Court in *Wilson v. Garcia*, 471 U.S. 261 (1984), held that 42 U.S.C. § 1988 requires federal courts to borrow and apply a state's personal injury statute of limitations to all Section 1983 claims. The applicable statute in this instance is 735 ILCS 5/13-202 (2006), which provides that actions for damages shall be commenced within two years after the cause of action accrued. *Williams v. Lampe*, 399 F.3d 867, 869-70 (7th Cir. 2005); *Farrell v. McDonough*, 966 F.2d 279, 280-82 (7th Cir. 1992). Illinois no longer tolls the statute of limitations for inmates. *See Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992). In claims brought under § 1983, "[f]ederal law defines when a claim accrues, . . . and the federal rule for medical errors is that a claim accrues when a person knows his injury and its cause." *Devbrow v. Kalm*, 705 F.3d 765, 768 (7th Cir. 2013); quoting *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012)

Plaintiff, in his complaint, states that on or about March 21, 2007, subsequent to making complaints about "diabetic-esque" health problems, his glucose level was tested and the results showed that his blood glucose level was 118. Plaintiff pleads that the 114 reading indicates that his blood-glucose level was out of range. Accordingly, Plaintiff has pled that he was aware of his medical condition as early as March 21, 2007. Under the governing case law, Plaintiff's claim accrued on that date, not after he reviewed his medical records in April of 2011. *See Devbrow*, 705 F3d. at 768. Under the controlling statute of limitations, then, Plaintiff's claim expired in March of 2009, almost four years prior to filing suit.

In his response to the order to show cause, Plaintiff argues that the limitations period is

Exhibit A

tolled by the time he was exhausting his administrative remedies. In this he is correct. However, he repeatedly pleads in his complaint that he made complaints, starting in March of 2007, and continuing to 2010, regarding his health care relating to his blood glucose levels. He mistakenly argues that when he received his medical records on April 11, 2011, his claim accrued, and the grievance he filed after that date is the one that entitles him to tolling that would make his complaint timely. He filed that grievance with his counselor on April 21, 2011, and completed the process when he received a letter denying his grievance on January 10, 2012. However, the nine months tolling for that grievance, when added to the date his claim expired (March 21, 2009) does not make his claim timely.

Based on the foregoing, Plaintiff's complaint is dismissed as untimely under the applicable statute of limitations. This case is closed.

1/14/14

James F. Holderman
James F. Holderman
United States District Judge

074488677    1/7/60
mlw

Stateville Correctional Center
(Facility)

Offender's Name: _Nally William_    ID# _N51494_

Reason for Referral: ☐ Consult   ☐ Non-Formulary Medications   ☐ Medical Equipment
☐ Evaluation   ☐ Management
☐ Procedure/service (specify) _____
☐ Other (specify) _____

Urgent: ☐ Yes   ☐ No

Referred to: _LLC   Cardiology_    11/23/10

Rationale for Referral: _49 yrs w/m hx of chest pain_
_often > 1 wk. c/o SOB_
_Pt had cardiac cath + implant in 02_
_Pt does not remember the name of med_
_Hx of smoking until 2006_

Print Referring Practitioner's Name    Referring Practitioner's Signature P6J    Date 8/23/10

Report of Referral (Use Reverse Side, if necessary)

Findings: _Chol-166, HDL-29, LDL-76, Tri-304 non-fasting gluc-226_
_Atypical Chest Pain + SOB w/ exertion_

Assessment: _① Possible diabetes_
_② Atypical CP/SOB_

Recommendations/Plans: _①Needs screening for Diabetes with fasting glucose_
_and treatment if he has diabetes._
_②Transthoracic Echocardiogram and Treadmill Stress Echocardiogram_

Print Practitioner's Name _George Nijmeh_    Practitioner's Signature    Date 11-23-10

Facility Medical Director Use Only
I have reviewed the recommendations and:

☑ Approve.

☐ Deny or revise as indicated on the Notification of Medical Service Referral Denial or Revision,
DOC 0255.

Print Facility Medical Director's Name P6J    Facility Medical Director's Signature P6J    Date 11-30-10

Distribution: Offender's Medical File, and    Page 1 of 1    DOC 0254 (Eff. 4/2007)
if denied/revised, Heath Care Unit Administrator    (Replaces DC 7199)

Exhibit B

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 12-20-2010 | Offender: (Please Print) William Nally | ID#: N-51494 |
|---|---|---|
| Present Facility: Statesville | Facility where grievance issue occurred: Statesville | |

**NATURE OF GRIEVANCE:**

JAN 0 T 2010
0093

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [X] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____/____/____
    Date of Report                Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** This is a Medical Grievance to and against Medical Director Doctor Ghosh pursuant to 730 ILCS 5/3-7-2(d) which reads in part ... " All institutions and facilities of the department shall provide every committed person with ... Medical and Dental care." and inclusive of caselaw pertainint thereto, the following is respectfully averred ; This writer has been receiving medical treatment since 11/4/09 for Liver problems, within two months of treatment the author began having complications of abdominal pain and severe chest pains, I immediately informed several nurses including but not limited to Nurse Tiffany and Nurse Sandman. On 2-11-2010 I briefly saw Med. Dir. Dr. Ghosh in health care and asked if

**Relief Requested:** Medical Care that is improperly being denied.

- [X] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| William Nally | N-51494 | 12/20/2010 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

| Date Received: ____/____/____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

### EMERGENCY REVIEW

Rec'd 1/6/11 By Dr Sch. (CF)

| Date Received: 1/12/11 | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [X] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Marcus Hardy | | 1/12/11 |
|---|---|---|
| Chief Administrative Officer's Signature | | Date |

Distribution: Master File; Offender                Page 1                DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper                Exhibit C

complications were resultant of liver treatment. He said ~~yes~~ Yes. He then prescribed Ibuprofen and ordered a blood test. For several monthsand still today the chest and abdominal pains have progressively worsened, I have noted this to several nurses, finally in Mid-September of 2010 I saw Med. Dir. Dr Ghosh who finally relented and gave me an EKG then after he prescribed aspirin and Nitroglycerin and reffered me to an outside Cardiologist. On 11-23-2010 I saw this cardiologist who promptly informed me that I am a Diabetic. Thats right, a Diabetic. In Mid- December 2010 I was seen by staff Doctor, Dr. Schaffer who diagnosed me with Gastroenteritis and prescribed medication. It is noted that for over one year my blood has been drawn on a regular basis yet the serious health issues mentioned were never addressed or even diagnosed by Dr. Ghosh. It is further noted that I possess Arteriosclerosis of the abdominal Arota, as that is in my Medical File. I was neveer informed by Dr. Ghosh, ever of this diagnosis. I am in severe pain all the time and this Medical atrocity has continues unabated for over one year. The Med. Dir. Dr. Ghosh is negligent as for over one year the diagnosis and prognosis set forth was passed over and filed away by Dr. Ghosh for no discernable reason, when clearly,as evinced by two separate Doctors, clear and convincing Issues exist that require immediate emergency care, that still today is denied by Dr. Ghosh for no good reason. In support of it is stated; This facilities actions and inactions of improper Medical Care are antithetical and in contravrntion of our U.S.C.A. 8th Amendment which speaks of Cruel and Unusual Punishment. In Taylor v. Adams,221 F.3d 1254, the court agreed that the medical care need be "one that if left unattendedposes a substantial risk of serious harm" and see; Chance v. Armstrong,143 F.3d 698 which states, "its the particular risk of harm faced by a prisoner due to the challenged deprivation of care... that is relevant for 8th Amend. purposes. It is further noted that this facilities and Dr. Ghosh's actions and inactions are indicative of Deliberate Indifference as outlined as criminally reckless and intentional. see; Farmer v. Brennan, 511 U.S. 825. This facility is acting under color of law, Burrell v. City of Matoon, 378 F.3d 642 and thereto is in violation of constitutional rights as annunciated, therein as a result of this facilities and Dr. Ghosh's Deliberate Indifference the causative effect is extreme constant pain which is injurious and debilitating. see; Hutto v. Finney,437 U.S. 678. Wherefore, this writer prays for immediate Medical Action and Treatment thereof that is just and proper and for this facility and Dr. Ghosh to comply with any and all ILCS Statutes and Constitutional standards and Caselaw and its progeny cited therein.

Exhibit C

B211

| Date: 1-7-2011 | Offender: (Please Print) William Nally | ID#: N-51494 |
|---|---|---|
| Present Facility: Statesville | Facility where grievance issue occurred: Statesville | |

**NATURE OF GRIEVANCE:**

| | | |
|---|---|---|
| ☐ Personal Property | ☐ Mail Handling | ☐ Restoration of Good Time |
| ☐ Staff Conduct | ☐ Dietary | ☒ Medical Treatment |
| ☐ Transfer Denial by Facility | ☐ Transfer Denial by Transfer Coordinator | ☐ Other (specify): |

☐ Disability ☐ HIPAA 0503

☐ Disciplinary Report: _____/_____
Date of Report            Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** ON DEC. 8TH 2010 I WAS TAKEN TO THE HEALTH CARE UNIT FOR CHEST PAINS AND ABDOMINAL PAINS. I INFORMED THE NURSE THAT THE CARDIOLOGIST AT U OF I TOLD ME I WAS A DIABETIC. THE NURSE ALSO RAN AN ACCU-CHEK. IT WAS 270. THE NURSE ALSO RAN AN E.K.G ON ME. AFTER THAT DR. SCHEAFFER CAME INTO THE E.R. WHERE I WAS BEING EVALUATED. HE READ MY E.K.G AND ASKED ABOUT MY CHEST PAINS. HE LISTENED TO MY HEART. THEN TOLD ME THAT NOTHING WAS WRONG WITH MY HEART. HE THEN

**Relief Requested:** I NEVER WANT TO BE TREATED BY DR. SHEAFFER AGAIN. I DON'T WANT TO BE IN PAIN. I WANT TO KNOW WHAT IS CAUSING MY ABDOMINAL PAIN.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____  N-51494  1, 7, 2011
Offender's Signature          ID#        Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 02, 14, 11  ☐ Send directly to Grievance Officer  ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: According to the Med. Rec. department you have been scheduled for an appointment on Set. 6. 2011 and during this visit it will be determined what actions will be taken.

C. Johnson                    C. Johnson          02, 15, 11
Print Counselor's Name        Counselor's Signature   Date of Response

---

**EMERGENCY REVIEW**

Date Received: 1, 27, 11  Is this determined to be of an emergency nature?  ☐ Yes; expedite emergency grievance
☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Marcus Hardy                                    1, 28, 11
Chief Administrative Officer's Signature          Date

Distribution: Master File; Offender                Page 1                DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper

Exhibit D

INFORMED ME THAT I SHOULD GO BACK TO MY UNIT. WHEN I ASKED HIM ABOUT MY ABDOMINAL PAINS, HE REFUSED TO DISCUSS THE MATTER WITH ME. HE TOLD ME THAT HE WAS ONLY SEEING ME ABOUT MY CHEST PAINS AND WOULDN'T TALK TO ME ABOUT ANY OTHER HEALTH CONCERNS. I ALSO ASKED HIM ABOUT MY RECENT DIAGNOSIS OF DIABETES. WITHOUT EVEN TAKING THE TIME TO LOOK IN MY FILE, DR. SHEAFFER TOLD ME I WAS ON THE DIABETIC CLINIC LIST AND THAT HE WOULD TALK ABOUT MY DIABETES WITH ME THEN. HE THEN TOLD ME IN NO UNCERTAIN TERMS TO LEAVE THE E.R. THAT HE WAS DONE WITH ME. I FOLLOWED HIS ORDERS AND WENT TO THE BULL PEN. WHILE IN THE BULL PEN AN INMATE CAME IN AND TOLD ME THAT THE NURSES IN THE E.R. WERE TRYING TO MAKE DR. SHEAFFER UNDERSTAND THAT I HAD NEVER BEEN DIAGNOSED AS A DIABETIC AT STATEVILLE. A SHORT TIME LATER DR. SHEAFFER CAME TO THE BULL PEN AND ASKED ME NOT TO LEAVE. HE TOLD ME HE WANTED TO RUN SOME BLOOD WORK ON ME. I WAS GIVEN METFORMIN HCL 500 mg FOR MY DIABETES ON THE NEXT DAY DEC 9th. ON DEC. 9th, 10th, 11th, 12th, 13th, & 14th I PUT IN EMERGENCY REQUESTS TO BE SEEN BY A DOCTOR CONCERNING MY UNBEARABLE ABDOMINAL PAINS. FINALLY ON DEC. 15th DR. WILLIAMS CAME TO B-HOUSE FOR SICKCALL. SHE SENT A NURSE TO MY CELL TO ENFORM ME THAT SHE WAS GOING TO CALL ME TO THE E.R. THE NEXT DAY DEC. 16th FOR MY ABDOMINAL PAINS. ON DEC. 16th I WAS SEEN IN THE E.R. BY DR. SCHEAFFER FOR SAID ABDOMINAL PAINS. HE PUSHED ON MY STOMACH AND TOLD ME THAT I HAD GASTROENTERITIS. HE WENT ON TO TELL ME THAT THIS IS VERY PAINFUL BUT NOT LIFE THREATENING. HE TOLD ME IT WAS CAUSED FROM EATING TO MUCH COMMISSARY FOOD AND TO MUCH SODIUM. HE ALSO TOLD ME THAT I WAS EATING TO MUCH HOT AND SPICY FOOD. HE DIDN'T EVEN ASK ME IF I WAS EATING ANY HIGH SODIUM, COMMISSARY, OR SPICY FOOD. HE ALSO SAID THAT HE WOULD DO SOME BLOOD WORK TO MAKE SURE THAT I DIDN'T HAVE A STOMACH ULCER AS WELL. HE PUT ME ON 150 mg OF RANITIDINE AND SAID HE WOULD SEE ME AGAIN IN ABOUT

Exhibit D

3 OR 4 WEEKS. HE ALSO TOLD ME NOT TO EAT ANY
COMMISSARY FOOD. ON 12-22-10 I WENT TO HEALTH CARE
TO GET THE BLOOD WORK DONE TO SEE IF I HAD
AN ULCER. ON 1-6-11 I WENT BACK TO SEE DR. SCHEAFFER
FOR MY ABDOMINAL PAINS AND TO TALK TO HIM ABOUT
BEING A DIABETIC. HE TOLD ME I DID NOT HAVE A
STOMACH ULCER. HE TOOK ME OFF RANITIDINE AND PUT
ME ON PRILOSEC FOR ACID REFLUX. IT SHOULD BE
NOTED THAT I DO NOT HAVE ACID REFLUX AND THIS
IS NOT THE CAUSE OF MY ABDOMINAL PAINS. HE NEVER
EVEN ASKED IF I HAD ACID REFLUX. HE DIDN'T
EVEN REMEMBER THAT HE HAD DIAGNOSED ME WITH
GASTROENTERITIS. ALL HE COULD SEEM TO REMEMBER
WHEN LOOKING AT HIS PAPERS WAS THAT HE DIDN'T
WANT ME EATING COMMISSARY FOOD. HE SAID IN
HIS 6 YEARS OF WORKING WITH INMATES ALL THEIR
STOMACH PROBLEMS WERE CAUSED FROM EATING
COMMISSARY FOOD. HE TOLD ME HE WANTED ME TO
TRY THE PRILOSEC FOR A FEW MONTHS TO SEE IF
IT WORKS. I'M IN PAIN 24 HOURS A DAY. I
FEEL LIKE DR. SHEAFFER ISN'T TRYING TO FIGURE
OUT WHAT'S WRONG WITH ME. IF ANYTHING I
THINK HE'S PUTTING ME THROUGH MORE PAIN.
THIS DOCTOR IS VERY DANGEROUS TO MY HEALTH
AND THE HEALTH OF EVERY INMATE THAT HE
COMES INTO CONTACT WITH.

— END OF GRIEVANCE —

Exhibit D



University of
Illinois
Medical Center
Reference Laborator

Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

FASTING: U

| PATIENT NAME | PATIENT ID | DOB | SEX | STATUS | | DESTINATION |
|---|---|---|---|---|---|---|
| NALLY, N51494 | A209-51494 | 12/17/1960 | M | Final | | D209 |
| PHYSICIAN | COLLECT DATE & TIME | DATE OF SERVICE | PRINTED ON | | PAGE |
| GHOSH, PARTHASARATHI | 03/21/2007 10:00 | 03/21/2007 23:30 | 03/22/2007 6:02 | | 1 |
| REQUISITION NO. | PT. LAB NO. | LAB REF NO. | | | |
| A209.1448 | | | | | |

COMMENTS:

| Diagnostic Procedure | Result In Range | Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMP. METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 10 | | MG/DL | 6-20 |
| SODIUM | 136 | | MMOL/L | 135-145 |
| POTASSIUM | 4.0 | | MMOL/L | 3.5-5.3 |
| CHLORIDE | 101 | | MMOL/L | 98-108 |
| GLUCOSE | | 118 H | MG/DL | 65-110 |
| CREATININE | 1.0 | | MG/DL | 0.5-1.5 |
| CALCIUM | 9.3 | | MG/DL | 8.6-10.6 |
| TOTAL PROTEIN | 7.1 | | G/DL | 6.0-8.0 |
| ALBUMIN | 4.0 | | GM/DL | 3.4-5.0 |
| BILIRUBIN, TOTAL | 0.6 | | MG/DL | 0-1.2 |
| ALK PHOS | 111 | | U/L | 40-125 |
| AST | | 114 H | U/L | 10-40 |
| CO2 CONTENT | 25 | | MMOL/L | 24-32 |
| ANION GAP | 10 | | MMOL/L | 3-11 |
| ALT | | 189 H | U/L | 10-50 |
| BUN/CREAT RATIO | | 10.0 L | | 12-20 |
| LIPIDS | | | | |
| CHOLESTEROL | 153 | | MG/DL | 100-200 |

(NOTE)

Cholesterol(mg/dl):

| | |
|---|---|
| <200 | DESIRABLE |
| 200-239 | BORDERLINE HIGH |
| >239 | HIGH |

| TRIGLYCERIDE | 105 | | MG/DL | 45-150 |
|---|---|---|---|---|

(NOTE)

Triglycerides (mg/dl):

| | |
|---|---|
| <150 | NORMAL |
| 150-199 | BORDERLINE HIGH |
| 200-499 | HIGH |
| >499 | VERY HIGH |

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual.

| HDL | | 31 L | MG/DL | 40-60 |
|---|---|---|---|---|

(NOTE)

Exhibit E

| Date: 4-21-2011 | Offender: (Please Print) Nally | ID#: N-51494 |
|---|---|---|

| Present Facility: Statesville C.C. | Facility where grievance issue occurred: Statesville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ___/___/___
  Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** ON 4/5/2011 I RECEIVED A COPY OF MY MEDICAL RECORDS. I WAS ASTONISHED TO FIND OUT THAT I WAS A DIABETIC. I'VE BEEN SEEN BY DR. GHOSH, DR. WILLIAMS, AND DR. ZHANG PLENTY OF TIMES OVER THE YEARS. HOWEVER NONE OF THE MEDICAL STAFF HERE AT STATEVILLE CORRECTIONAL FACILITY HAD THE COMMON DECENCY TO INFORM ME THAT I AM A DIABETIC. THE AVERAGE RANGE FOR A NON-DIABETICS GLUCOSE LEVEL IS 80-110. WHEN I CAME BACK FROM COUNTY JAIL TO THE NORTHERN RECEIVING CENTER ON 5-20-05 MY GLUCOSE LEVEL

**Relief Requested:** TRANSFER TO DIXON, 50 THOUSAND DOLLARS, I WANT TO BE SEEN BY THE MEDICAL DIRECTOR EVERY 90 DAYS REGARDLESS OF THE FACILITY I'M IN. PERMANENT LOW GALLERY LOW BUNK PERMIT.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Offender's Signature | ID# N-51494 | Date 4/21/2011 |
|---|---|---|

(Continue on reverse side if necessary)

| **Counselor's Response (if applicable)** | | |
|---|---|---|

| Date Received: ___/___/___ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

| **EMERGENCY REVIEW** | | |
|---|---|---|

| Date Received: ___/___/___ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Chief Administrative Officer's Signature | | Date ___/___/___ |
|---|---|---|

Exhibit F

WAS 121. ON 3-21-07 MY GLUCOSE LEVEL WAS 118. ON 10-16-07 MY GLUCOSE LEVEL WAS 114 AND MY HB-A1C WAS 6.3. THIS PROVED EMPHATICALLY THAT I WAS A DIABETIC. HOWEVER I STILL WASN'T WARNED OR TOLD OF THIS SERIOUS MEDICAL CONDITION. ON 2-19-08 MY GLUCOSE LEVEL SHOT ALL THE WAY TO 200. ON 3-17-09 IT WAS 111. ON 5-15-09 IT WAS 160. ON 9-30-09 IT WAS 136. ON 12-29-09 IT WAS 137. ON 2-11-10 IT WAS 162. ON 3-25-10 IT WAS 124. ON 6-30-10 IT WAS 141. ON 12-8-10 IT SHOT ALL THE WAY UP TO 222 AND MY HB-A1C WAS 5.6. ON 1-14-11 MY GLUCOSE LEVEL WAS AT 141 AND MY HB-A1C WAS 6.3. THERE IS NO DOUBT THAT I AM A DIABETIC. THERE IS ALSO NO REASON MEDICAL OR OTHER WISE WHY THIS INFORMATION SHOULDN'T HAVE BEEN RELEASED TO ME, AND WHY I WASN'T IMMEDIATELY TREATED FOR THIS CONDITION. DUE TO COMPLICATIONS FROM THE DIABETES, I WAS TAKEN TO AN OUTSIDE UNIVERSITY TO SEE A CARDIOLOGIST. SAID CARDIOLOGIST DIAGNOSED ME AS A DIABETIC. HE SENT ME BACK TO STATEVILLE WITH WRITTEN RECOMMENDATIONS. HOWEVER THE GROSS MEDICAL NEGLECT WAS TO CONTINUE FOR ANOTHER TWO WEEKS. 2 WEEKS AFTER BEING DIAGNOSED BY THE CARDIOLOGIST I TALKED TO WARDEN HARDY IN FRONT OF MY CELL. HE FORCED THE MEDICAL STAFF HERE TO DO THERE JOB AND RUN TESTS ON ME. AT THAT POINT I WAS FINALLY DIAGNOSED AT A INSTITUTIONAL LEVEL AS A / DIABETIC.

— END OF GRIEVANCE —

Nally N-51494 B-211

4-21-2011

Exhibit F

In The United States District Court
Northern District Of Illinois
Eastern Division

William Nally
      Plaintiff,

    v.

Parthasarathi Ghosh, et al.,
      Defendants.

No. 13 C 7268

Honorable James F. Holderman

Judge Presiding.

CERTIFICATE OF SERVICE

TO:    U.S. District Court, Northern District of Illinois
        219 South Dearborn Street
        Chicago, Illinois 60604
        Attn: Prisoner Correspondence

    PLEASE TAKE NOTICE that on April 16, 2014, the undersigned deposited copies of the enclosed Plaintiff's Motion For Relief From A Judgment Or Order in the above-captioned matter, Plaintiff's Declaration in Support, and Memorandum of Law in Support, in the institutional mail system at Stateville C.C., properly addressed to the above-named party, for delivery via the U.S. Postal Service.

    Also, please return a stamped "filed" copy to Plaintiff upon receipt of the foregoing.

                          William Nally
                          William Nally
                          Reg. No. N54494
                          P.O. Box 112
                          Joliet, Il 60434

Pursuant to 28 U.S.C. section 1746, I declare, under penalty of perjury, that the foregoing is true and correct.

                          William Nally
                          William Nally, Reg. No. N54494